

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **MAURY ENDSLEY,** | ) | **Docket No.: 2016-05-0743** |
| **Employee,** | ) | |
| **v.** | ) | |
| **BENCHMARK CONTRACTORS, LLC** | ) | **State File Number: 76993-2014** |
| **Employer,** | ) | |
| **And** | ) | |
| **NATIONWIDE INS. CO.,** | ) | **Judge Dale Tipps** |
| **Insurance Carrier/TPA.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on May 25, 2017, on the Request for Expedited Hearing filed by Maury Endsley. The present focus of this case is whether Mr. Endsley is entitled to additional medical benefits for his back injury. The central legal issue is whether Mr. Endsley is likely to establish at a hearing on the merits that he is entitled to additional treatment, including surgery, with Dr. James Fish.[1] For the reasons set forth below, the Court holds Mr. Endsley is likely to meet this burden and is entitled to the requested medical benefits.

### History of Claim

Mr. Endsley sustained a work-related injury to his low back on September 24, 2014. Benchmark accepted the claim as compensable and provided benefits, including a panel of orthopedic specialists from which Mr. Endsley selected Dr. Klekamp as his authorized treating physician (ATP). Dr. Klekamp diagnosed a herniated disc and lateral recess stenosis and performed a left L4-5 hemilaminectomy on December 1, 2014.

---

[1] Mr. Endsley's pre-hearing position statement indicated he was also seeking temporary disability benefits. However, because the Dispute Certification Notice failed to identify temporary disability benefits as a disputed issue, the Court will only address the request for medical treatment at this time. *See* Tenn. Code Ann. § 50-6-239(b)(1) (2016).

1

Following the surgery, Dr. Klekamp's records reflect a decrease in Mr. Endsley's radiating pain but continued complaints of back pain. A follow-up MRI showed a successful discectomy with no evidence of ongoing nerve compression. Dr. Klekamp referred Mr. Endsley to pain management and in his May 5, 2015 treatment note discussed future treatment options, including a L4-5 fusion. He stated:

> He is a smoker and I believe based on his ongoing symptoms and tobacco use, he would be a marginal to poor candidate to consider fusion. I could only provide for him a less than 50% chance that it would provide gainful long term relief from his back pain. He wishes to seek a second opinion. . . . I would like to transition his care over through pain management as I have not much more to offer him regarding future treatment options.

Benchmark authorized pain management treatment with Dr. Eric Young. It also provided a panel for a second opinion from which Mr. Endsley selected Dr. Fish. The October 21, 2015 progress note from Dr. Fish contains the notation: "This is a second opinion only." Mr. Endsley reported pain in his lumbar spine that radiated down his left leg, as well as weakness and paresthesia in the left leg. After examining Mr. Endsley, Dr. Fish assessed lumbar stenosis, radiculopathy, lumbar HNP without myelopathy, and low back pain. He recommended an epidural steroid injection and a repeat MRI of the lumbar spine "to evaluate for a recurrent disc herniation, given that his symptoms have progressed and he did sustain a significant fall and has had previous lumbar surgery." Benchmark authorized the repeat MRI.

Benchmark refused to authorize a return to Dr. Fish after the MRI, causing Mr. Endsley to file a Petition for Benefit Determination. For the ensuing Expedited Hearing, Dr. Klekamp testified by deposition on April 28, 2016. Based on his review of Dr. Fish's notes, Dr. Klekamp felt that Mr. Endsley's symptoms had progressed. He never recommended the fusion operation but confirmed he did recommend a second-opinion consultation on the question of surgery.

The Court ordered a return visit with Dr. Fish so that he could complete his second-opinion evaluation. Mr. Endsley underwent another MRI, and Dr. Fish noted that it showed "a central and left paracentral disc protrusion at L4-5 with caudal extrusion of disc material that is recurrent in nature. Patient has a previous left-sided laminectomy at that level. Disc space collapse is significant." Dr. Fish recommended a transforaminal lumbar interbody fusion operation, stating:

> He's had a recurrent disc herniation. He now has bilateral lower extremity symptoms that are progressive. A revision laminectomy and discectomy is not appropriate. We have weighed the pros and cons of a decompressive laminectomy versus a one level fusion and we both agree that the one level fusion with complete removal of the disc and decompression bilaterally is

2

the most appropriate course of action. Within a reasonable degree of medical certainty, the surgery proposed above is the direct result of the September 2014 work-related injury.

At Benchmark's request, Dr. Klekamp executed an affidavit stating that he reviewed all of Mr. Endsley's medical records regarding his recent visits with Dr. Fish. He also reviewed the most recent MRI and compared it to two MRIs from 2015. Based on that review, he stated, "I do not believe that the requested spinal fusion surgery is necessary. Further, I do not believe that Mr. Endsley has had a recurrent disc herniation at the L4-5 vertebrae."

Mr. Endsley seeks an order authorizing the surgery recommended by Dr. Fish. He relied on Dr. Fish's opinion that the fusion surgery is both reasonable and medically necessary. Benchmark counters that Mr. Endsley is not entitled to surgery, arguing that Dr. Klekamp's opinion is entitled to a presumption of correctness, which Mr. Endsley has failed to overcome.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). Therefore, because Mr. Endsley seeks an order for the surgery Dr. Fish recommended, he bears the burden of proving that his work accident made the subject surgery reasonable and necessary.

However, because this case is in a posture of an Expedited Hearing, Mr. Endsley need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Applying these principles to the facts of this case, the Court finds Mr. Endsley meets this burden.

The Court first notes that Dr. Klekamp's opinion is not afforded the presumption of correctness established by Tennessee Code Annotated section 50-6-102(14)(E) (2016). Dr. Klekamp referred Mr. Endsley to pain management, and Benchmark provided that treatment through Dr. Young. As Benchmark pointed out in the first hearing, this means that the Court must consider Tennessee Code Annotated section 50-6-204(a)(3)(E), which provides that where the treating physician has referred the employee to a specialist physician, the specialist physician shall become the treating physician until treatment by the specialist physician concludes and the employee is referred back to the treating physician selected from the initial panel. Although Mr. Endsley testified that he

3

eventually stopped seeing Dr. Young because he was dissatisfied with his treatment, there is no evidence that Dr. Young ever referred Mr. Endsley back to Dr. Klekamp. Thus, it appears that Dr. Young is still the ATP, not Dr. Klekamp. As a result, Dr. Klekamp's opinion is not entitled to the presumption of correctness. However, even if Dr. Klekamp's opinion were presumed to be correct, the Court finds the preponderance of the medical proof is sufficient to overcome that presumption.

Dr. Fish and Dr. Klekamp each expressed very different opinions regarding diagnosis and reasonably necessary treatment. In resolving this difference of opinions, the Court notes longstanding Tennessee case law that provides:

> When the medical testimony differs, the trial judge must obviously choose which view to believe. In doing so, he is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts.

*Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991); s*ee also Darraj v. McKee Foods Corp.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 4, at *13-14 (Jan. 17, 2017).

Applying the first of these factors, the Court notes that both physicians are spine surgeons included by Benchmark on its workers' compensation panels. Although Dr. Klekamp's deposition more thoroughly described his credentials and experience, there is no evidence to suggest that he is more qualified than Dr. Fish. In the absence of any information upon which to favor one doctor's qualifications over the other, the Court cannot find any determinative differences between the doctors.

The next two factors weigh in favor of Dr. Fish. Mr. Endsley testified that he had not seen Dr. Klekamp since May 2015. Dr. Fish, on the other hand, saw Mr. Endsley at least three times since then – twice in February 2017, when he made his surgical recommendations. The Court is not suggesting that the last doctor to see an injured worker will always be more likely to be correct. However, the substantial amount of time elapsed in this case suggests that, to the extent Mr. Endsley's condition has changed since he last saw Dr. Klekamp, Dr. Fish is better situated to evaluate that condition and make treatment recommendations.

The last *Orman* factor is the most significant in this case. Dr. Klekamp's evaluation of Mr. Endsley's surgical needs is inconsistent, or at least difficult to construe. In his recent affidavit, he stated without reservation that he did not believe spinal fusion surgery is necessary or that Mr. Endsley has had a recurrent disc herniation at L4-5. However, in his deposition, Dr. Klekamp testified:

4

Q. Are you saying that Mr. Endsley does not need the fusion surgery?

A. No.

Q. Okay, so it's your opinion that the fusion surgery is a reasonable and necessary treatment option for Mr. Endsley?

A. I believe it's an option for Mr. Endsley, a viable option.

Q. So, Doctor, would it be fair to say that the surgery, the fusion surgery, is a surgery that Mr. Endsley needs, and it's up to him if he wants to have it?

A. I would say that it is an option for his future treatment, and Mr. Endsley has to decide whether he wants to proceed. Let me clarify. What Mr. Endsley has is not life threatening, so at no point am I going to have – will I say that he has to have this surgery. I think it is a viable option for his treatment going forward.

Q. Okay. And with respect to the need for surgery, what would you say is the cause for that?

A. I believe it is discogenic pain that occurred after the fall at work from the injury to the disc.

Deposition of Dr. Klekamp, pp. 13-14. Dr. Klekamp also commented on the history Mr. Endsley gave to Dr. Fish. He agreed that Mr. Endsley's symptoms had progressed and his left leg weakness was "consistent with an L5 distribution of pain and weakness." *Id*. at 19.

On cross-examination, Dr. Klekamp testified he did not feel Mr. Endsley was a good surgical candidate because he is a smoker. He felt there was a less than fifty-percent chance that fusion surgery would correct the problem because, "Based on my success rate doing fusions for degenerative discs and my hands I have a less than 50 percent chance of improvement. I have other colleagues that have better results, so I oftentimes will refer patients out for second opinions." He went on to say, "I think it's a reasonable option to consider, but I do not believe it was necessary." *Id*. at 22, 30.

On redirect, Dr. Klekamp testified as follows:

Q. Would you defer to [Dr. Fish] on future treatment options at this point?

A. Yes.

Q. Okay. And if he determined that the surgery was both reasonable and necessary, would you defer to him on those medical decisions at this time?

A. Yes.

…………

Q. And, Doctor, if Mr. Endsley were to testify that he had no prior back

5

pain before this fall, had no back issues whatsoever and since the fall he's had constant pain and discomfort, would you agree that the need for this fusion surgery is the fall at work?

A. Yes.

*Id*. at 31, 32.

To summarize, Dr. Klekamp has stated both that fusion surgery is a viable option for Mr. Endsley and that the surgery is not necessary. He testified that Mr. Endsley's need for fusion surgery is the result of an injury to his disc from his workplace fall, that Mr. Endsley's symptoms have progressed, and that his left leg weakness is consistent with an L5 distribution of pain and weakness. However, he also now says there is no recurrent disc herniation at L4-5.[2] He testified that if Dr. Fish determined that the surgery were both reasonable and necessary, he would defer to Dr. Fish on that determination, but now says he disagrees with Dr. Fish and the surgery is not necessary. The Court finds Dr. Klekamp's opinions, if not outright inconsistent, are at least unpersuasive. At best, he seems to be saying that he would not perform the fusion surgery, but it is reasonable for other doctors to do so.

After careful consideration, the Court finds Dr. Fish's opinion more persuasive. Having recently seen Mr. Endsley and reviewed his MRI, Dr. Fish unambiguously stated that the proposed surgery is the direct result of the 2014 work injury and is both reasonable and necessary. Applying the last factor set out in *Orman*, his evaluation of the importance of available information appears to be more reliable. Mr. Endsley therefore appears likely to prevail at a hearing on the merits that his work accident made the proposed fusion surgery reasonable and necessary.

This finding raises the question of who should provide Mr. Endsley's future medical care. Under normal circumstances, Mr. Endsley would not be entitled to transfer his treatment to a second-opinion physician. However, having established that he is likely to prove entitlement to surgery that Dr. Klekamp will not perform, Mr. Endsley needs a doctor to perform that surgery. The Court notes that the current ATP, Dr. Young, concluded his February 16, 2016 note with, "We will refer him to Dr. Fish for his lumbar degenerative disc disease and evaluation for corrective surgery." The Court concludes that it is thus appropriate in this case to designate Dr. Fish as the ATP for future treatment.

**IT IS, THEREFORE, ORDERED** as follows:

---

[2] The February 9, 2017 MRI report states: "Central disc protrusion at L4-L5, mildly compressing the L5 nerve root origins bilaterally." No evidence was presented to explain Dr. Klekamp's opinion that there is no recurrent disc herniation or whether he felt that the disc protrusion was related to the work accident.

6

1. Benchmark shall provide Mr. Endsley with medical treatment made reasonably necessary by the September 24, 2017 injury and in accordance with Tennessee Code Annotated section 50-6-204, including the surgery recommended by Dr. Fish. The Court designates Dr. Fish as the authorized treating physician.

2. This matter is set for a Scheduling Hearing on August 2, 2017, at 8:30 a.m. You must call 615-741-2112 or toll-free at 855-874-0473 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

   **ENTERED this the 2nd day of June, 2017.**

   _____
   **Judge Dale Tipps**
   **Court of Workers' Compensation Claims**

7

# APPENDIX

Exhibits:
1. Affidavit of Dr. John Klekamp
2. Transcript of Dr. Klekamp's deposition
3. Records from Vanderbilt Bone and Joint Clinic
4. Employee's indexed medical records
5. Employer's indexed medical records

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Supplemental Response to Employee's Request for Expedited Hearing
5. Employee's Position Statement

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 2nd day of June, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| **Timothy Lee** | | | | | x | **tim@timleelaw.com** |
| **Alston Peek** | | | | | X | **Alston.peek@mgclaw.com** |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**